# UNITED STATES DISTRICT COURT
## IN THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**EVELYN STOKES,**

                        Plaintiff,              Case No.          -cv

v.                                               Hon.

**BLUE CROSS BLUE SHIELD**
**OF MICHIGAN,**

                        Defendant.

_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Jocelyn C. Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454
richardmack@millercohen.com
jocelyn@millercohen.com

_____/

There is no other pending or resolved
civil action arising out of the same transaction
or occurrence as alleged in the complaint.

*/s/Jocelyn Flemons*
Jocelyn Flemons

## COMPLAINT AND JURY DEMAND

**NOW COMES** Plaintiff, by and through her attorneys, MILLER COHEN,

P.L.C., and for her Complaint against Defendant, she states as follows:

## **INTRODUCTION**

1.      As the only African American on her team, Plaintiff summoned the courage to speak up about the blatant racism she experienced at Blue Cross Blue Shield of Michigan (BCBSM).

2.      Prior to making her formal complaint Plaintiff suffered and endured racism for about three years in her position at BCBSM.

3.      Plaintiff first challenged the racist practices at BCBSM by making verbal complaints.

4.      Plaintiff made verbal complaints when BCBSM's management team and employees made racist jokes about others in Plaintiff's presence.

5.      Plaintiff also made verbal complaints when she learned her white colleagues received opportunities, training, support, and feedback from management that she did not receive.

6.      Because of her verbal complaints, Plaintiff was targeted by management who micromanaged her work, added numerous assignments to her already full load, and blamed her for things she had not done.

7.      Plaintiff became mentally and physically ill because of her working conditions and she was forced to go on FMLA/STD leave in December of 2021.

8.      While on FMLA/STD leave, Plaintiff wrote a formal complaint to BCBSM that identified some of the racial discrimination she had faced. (See **Exhibit**

**A,** Evelyn Stokes Employee Complaint)

9.      When Plaintiff returned to work she asked management about her complaint, but her complaint went unaddressed.

10.      On April 11, 2021, shortly after returning from FMLA/STD leave, Plaintiff was summoned to a meeting and fired for fraudulent and pretextual reasons.

11.      Plaintiff now pursues this cause of action for all damages to which she is entitled under law.

## PARTIES

12.      Plaintiff, Evelyn Stokes, was employed by the Defendant during the start of 2019 until about April 11, 2021.  Plaintiff is a resident of Detroit, Michigan and worked in Wayne County, Michigan during all relevant times in this action.

13.      Defendant, Blue Cross Blue Shield of Michigan, is a non-profit organization doing business in the City of Detroit, in the County of Wayne and in the State of Michigan.

## JURISDICTION

14.      This Court has original jurisdiction over Plaintiff's claims arising under Title VII of the Civil Rights Act of 1964, Family and Medical Leave Act, 29 U.S.C.S. §§ 2601-2654, and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*

15.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over

Plaintiff's state law claims.

16.    This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

17.    Plaintiff began working for Defendant in February of 2019.

18.    Prior to working for BCBSM Plaintiff had acquired over 15 years of successful corporate experience.

19.    Plaintiff was hired by BCBSM to work as a Vendor Business Analyst.

20.    The role of Vendor Business Analyst was a new position created by BCBSM.

21.    Initially Plaintiff was the only African American on her team.

22.    Plaintiff reported directly to Marcia Varner.

23.    The below paragraphs outline some of the racism that Plaintiff experienced, and some of her complaints about such.

24.    Plaintiff began hearing racist comments and jokes early on during her employment with Defendant.

25.    As one example, during a team building event at a bowling alley, Plaintiff's supervisor, Marcia Varner, told a colleague who was waiting for an Uber "Don't worry, it's a black car not a black guy!" (**Exhibit A**, page 3)

26.    Plaintiff was disturbed by the obviously racist comments of Ms. Varner.

4

27.     On another occasion, at a team meeting, one of the team members used the term Deago, which is a derogatory term used to describe Italians.

28.     The team member made the inappropriate and racist Deago comment in front of management and the entire team.

29.     When Defendant's management failed to say anything, Plaintiff told the team member the comment was a derogatory and offensive term that should not be used.

30.     Plaintiff was also denied training opportunities.

31.     Unlike her white colleagues, Plaintiff received little to no training for her position.

32.     Plaintiff was also not given any feedback about her work performance until nine days before her first review.

33.     Plaintiff complained to management about racism she experienced.

34.     For instance, following her first review, she complained that unlike her white colleagues, who received feedback throughout the year, she was not given feedback in enough time to correct any issues that the Employer found with her performance.

35.     When Plaintiff exposed the racist practices at BCBSM, she was isolated from the team, treated coldly, micromanaged, and accused of inappropriate actions she did not commit.

5

36.     As one example, on May 8, 2020, Defendant's supervisors accused Plaintiff of missing a deadline for a determination form that had been completed and submitted by Plaintiff two days before the deadline.

37.     Plaintiff was also given numerous additional tasks and placed under strenuous working conditions that were meant to make her fail.

38.     Plaintiff was given less than six months to meet her 2021 goals while her white colleagues were allowed a full year to meet their 2021 goals.

39.     By December of 2021, the stress of the work environment had taken its toll and caused Ms. Stokes to be diagnosed with anxiety, adjustment disorder w/depression, and right shoulder pain. (See **Exhibit B,** email and medical prescription sent to Employer on December 22, 2021)

40.     Plaintiff had to be taken off work for medical reasons.

41.     Plaintiff began FMLA/STD in December of 2021.

42.     While on FMLA/STD Plaintiff attended counseling sessions it was confirmed that the cause of her mental health disorder was the racist and stressful work environment she had endured for the past several years.

43.     Hoping to maintain her health and not return to the same stressful racist work environment, Plaintiff wrote a complaint to BCBSM Employee Relations on March 22, 2022. (**Exhibit A**)

44.     Plaintiff completed her FMLA/STD leave and returned to work on

March 28, 2022.

45.    After returning to work, Plaintiff asked management when her March 22, 2022, Complaint would be addressed.

46.    Plaintiff was ignored.

47.    On April 11, 2022, Ms. Stokes attended a meeting that she thought was meant to address her racial discrimination complaint.

48.    Plaintiff soon learned the meeting was to terminate her.

49.     At the meeting Plaintiff was told she was being terminated for: 1) improperly changing a date on her FMLA document; 2) operating a plant consulting business while she was on FMLA/STD; and 3) doing therapy exercises while on leave.

50.    The reasons given for Plaintiff's termination were all pretextual and for things which she either did not do or had done under someone else's direction.

51.     Plaintiff explained at the April 11th meeting she was directed by CompOne, to change the date management took issue with from 12/17/21 to 12/27/21 on her FMLA document.

52.    CompOne is the Employer's FMLA administrator.

53.    When the date was changed Plaintiff explained she was simply following the directive of the Employer's administrator.

54.     Plaintiff further explained she did not operate a planting business while she was on FMLA/STD leave.

55.     Lastly, Plaintiff explained the video the Defendant had of her exercising was taken towards the end of her leave and she was doing the exercises her therapist showed her.

56.     Despite Plaintiff's explanations showing none of the reasons provided for her termination were credible, Plaintiff was terminated.

57.     In reality, Plaintiff was fired because she took FMLA leave, complained about the racism which she witnessed and experienced at BCBSM, and due to her race itself.

58.     Plaintiff was a victim of racial harassment while working at Defendant BCBSM.

59.     Plaintiff brings these legal claims and seeks all relief allowable under the law.

**COUNT I**
**RETALIATION IN VIOLATION OF TITLE VII**

60.     Plaintiff incorporates by reference all preceding paragraphs.

61.     Title VII states that it shall be unlawful for an employer to discriminate against any of its employees for, inter alia, opposing "any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified,

assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

62.    Plaintiff opposed violations of the Title VII.

63.    Plaintiff was harassed and ultimately discharged because she opposed violations of Title VII.

64.    Plaintiff has received her Right To Sue Letter from the Equal Employment Opportunities Commission, attached as **Exhibit C**.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant her all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B. Order appropriate injunctive relief requiring the Defendant Blue Cross Blue Shield of Michigan to immediately implement all necessary corrective measures, such as reinstatement, mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

C. Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D. Grant all such further relief as shall meet equity and good conscience.

## COUNT II
## RETALIATION IN VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

65.     Plaintiff incorporates by reference all preceding paragraphs.

66.     Elliot-Larsen states that an employer shall not "retaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." M.C.L. § 37.2701(a).

67.     Plaintiff opposed a violation of the Act.

68.     Plaintiff was harassed and ultimately discharged because of opposing a violation of the Act.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, and other damages;

B. Order appropriate injunctive relief requiring the employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and effective complaint process for discrimination, to end the illegal discrimination described in the allegations above;

10

C. Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D. Grant all such further relief as shall meet equity and good conscience.

## COUNT III
## RACIAL HARASSMENT AND DISCRIMINATION IN VIOLATION OF TITLE VII

69.    Plaintiff incorporates by reference all preceding paragraphs.

70.    Title VII prohibits racial harassment and discrimination against protected persons in the workplace, and obligates employers to take certain steps to prevent such harassment and discrimination.

71.    As shown above, Plaintiff faced harassment and discrimination based upon race.

72.    Defendant and its agents were made aware of the rampant and continuous racial harassment and discrimination faced by Plaintiff, and disregarded Plaintiff's pleas for help and refused to initiate corrective measures.

73.    Defendant and its agents are liable for the harassment and discrimination and hostile environment experienced by Plaintiff because they caused the harassment and had knowledge of such harassment and did not initiate any corrective measures.

74.    Plaintiff has received her EEOC Right To Sue Letter enabling her to advance this claim. (**Exhibit C**)

11

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant her all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B. Order appropriate injunctive relief requiring the Employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D. Grant Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT IV
## RACIAL HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE ELLIOT-LARSEN CIVIL RIGHTS ACT

75.    Plaintiff incorporates by reference all preceding paragraphs.

76.    The Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 et. seq., prohibits racial harassment and discrimination against protected persons in the workplace, and obligates employers to take certain steps to prevent such harassment and

12

discrimination.

77.    Plaintiff faced harassment and discrimination.

78.    Defendant and its agents were well aware of the racial harassment and discrimination, and repeatedly disregarded Plaintiff's pleas for help and refused to initiate corrective measures.

79.    Defendant is liable for the harassment and discrimination, and hostile environment experienced by Plaintiff because it allowed the harassment and had knowledge of such harassment and did not initiate any corrective measures.

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, loss of job opportunity, and loss of earning capacity;

B. Order appropriate injunctive relief requiring Defendants to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D. Grant Plaintiff all such further legal and equitable relief as this Court deems

appropriate to make Plaintiff whole.

## COUNT V
## FMLA INTERFERENCE

80.     Plaintiff incorporates the preceding paragraphs by reference, as if fully re-alleged herein.

81.     Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 1211(2)(a):

    a.     Plaintiff worked for Defendant for more than one year; and

    b.     Plaintiff worked in excess 1,250 hours for the proceeding 12-month period at all relevant times.

82.     Defendant is a "employer" as defined by the FMLA, 29 U.S.C. § 1211(4)(a), as a public agency who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

83.     Plaintiff was entitled to FMLA leave as an eligible employee due to her anxiety, adjustment disorder w/depression, and right shoulder pain.

84.     Plaintiff gave notice to Defendant of her intention to take FMLA leave.

85.     While Defendant granted the Plaintiff leave under FMLA, Defendant interfered with Plaintiff's right to take FMLA leave.

14

86.     Defendants did not reasonably believe based on particularized facts that Plaintiff improperly requested FMLA because no such facts exist.

87.     Additionally, Plaintiff informed Defendant, at the April 11, 2022 meeting in which the Defendant terminated Plaintiff, that a representative of CompOne, the Employer's FMLA administrator, instructed her to change the date on the FMLA document in which the Defendant had taken issue with. She explained she was simply following the directive of the Employer's administrator.

88.     Using a date change on her FMLA document as the basis for termination interfered with and denied Plaintiff's right to take protected medical leave and was a violation of FMLA. 29 U.S.C. § 2615(a)(1), 29 C.F.R. § 825.220 (c).

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B. Order appropriate injunctive relief requiring the Employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D. Grant all such further relief as shall meet equity and good conscience.

## COUNT VI

## FMLA RETALIATION

89.    Plaintiff incorporates by reference all preceding paragraphs.

90.    Plaintiff was an "eligible employee" as defined by the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 1211(2)(a):

      a.    Plaintiff worked for Defendant for more than one year; and

      b.    Plaintiff worked in excess 1,250 hours for the proceeding 12-month period at all relevant times.

91.    Defendant is an "employer" as defined by the FMLA, 29 U.S.C. § 1211(4)(a), as a public agency who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.

92.    Plaintiff was entitled to FMLA leave as an eligible employee due to her anxiety, adjustment disorder w/depression, and right shoulder pain.

93.    While Defendant granted Plaintiff leave under the FMLA, Defendant discriminated and retaliated against Plaintiff for taking the leave.

16

94.     Terminating Plaintiff for applying for medical leave is retaliatory and a violation of the FMLA. 29 U.S.C. § 2615(a)(2).

**WHEREFORE**, Plaintiff requests that this Honorable Court:

A. Grant Plaintiff all available compensatory damages for economic injury, extreme mental and emotional distress, humiliation, outrage, economic damages, loss of employment opportunity, harm to reputation, loss of earning capacity, punitive, and other damages;

B. Order appropriate injunctive relief requiring the Employer to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff reasonable attorney's fees and costs incurred in this litigation; and

D. Grant all such further relief as shall meet equity and good conscience.

## COUNT VII
## DISABILITY HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

95.     Plaintiffs incorporate by reference all preceding paragraphs.

96.     During all material times, Plaintiff was a disabled person as defined by the Americans with Disabilities Amendments Act ("ADAA"), 42 U.S.C. § 12102.

97.     Plaintiff suffered from a physical impairment that substantially limited one or more major life activity. Plaintiff was also "regarded as" disabled by Defendant.

98.     Defendant is a covered entity and employer as defined by the ADAA, 42 U.S.C. § 12111(2), (5).  It has more than 15 employees and is engaged in an industry affecting commerce.

99.     In violation of the ADAA, 42 U.S.C. § 12112, Defendant discriminated against Plaintiff on the basis of her known disability by using her disability recovery exercises as grounds for her termination.

**WHEREFORE**, Plaintiff request that this Honorable Court enter an order:

A. Grant all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, punitive damages, loss of job opportunity, and loss of earning capacity;

B. Order appropriate injunctive relief requiring Defendants to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for

harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D. Grant Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

## COUNT VIII

## DISABILITY HARASSMENT AND DISCRIMINATION IN VIOLATION OF THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT

100.    Plaintiffs incorporate by reference all preceding paragraphs.

101.    During all material times, Plaintiff was a disabled person as defined by the Michigan's Persons with Disabilities Civil Rights Act, M.C.L. § 37.1103(d).

102.    Plaintiff suffered from a physical impairment that substantially limited one or more major life activity. Plaintiff was also "regarded as" disabled by Defendant.

103.    Defendant is a covered entity and employer as defined by M.C.L. § 37.1201(b).

104.    In violation of the M.C.L. § 37.1202, Defendant discriminated against Plaintiff on the basis of her known disability by using her disability recovery exercises as grounds for her termination.

19

**WHEREFORE**, Plaintiff request that this Honorable Court enter an order:

A. Grant all available damages for economic injury, loss of employment benefits, emotional distress, mental anguish, humiliation, outrage, embarrassment, pain and suffering, punitive damages, loss of job opportunity, and loss of earning capacity;

B. Order appropriate injunctive relief requiring Defendants to immediately implement all necessary corrective measures, such as mandatory training of all supervisory personnel and employees and an effective complaint process for harassment, to end the illegal harassment, discrimination and retaliation described in the allegations above;

C. Grant Plaintiff's reasonable attorney's fees and costs incurred in this litigation; and

D. Grant Plaintiff all such further legal and equitable relief as this Court deems appropriate to make Plaintiff whole.

[SIGNATURES NEXT PAGE]

Respectfully submitted,

**MILLER COHEN PLC**

/s/ *Jocelyn Flemons*
Richard G. Mack, Jr. (P58657)
Jocelyn Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Ste 335
Detroit, Michigan 48202
(313) 964-4454
richardmack@millercohen.com
jocelyn@millercohen.com

Dated:          October 27, 2023

**UNITED STATES DISTRICT COURT**
**IN THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**EVELYN STOKES,**

                  Plaintiff,             Case No.          -cv

v.                                          Hon.

**BLUE CROSS BLUE SHIELD**
**OF MICHIGAN,**

                  Defendant.
_____/

**MILLER COHEN, P.L.C.**
Richard G. Mack, Jr. (P58657)
Jocelyn C. Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Ste 335
Detroit, Michigan 48202
(313) 964-4454
richardmack@millercohen.com
jocelyn@millercohen.com
_____/

## DEMAND FOR TRIAL BY JURY

      **NOW COMES** Plaintiff, **Evelyn Stokes**, by and through her attorneys,

**MILLER COHEN, P.L.C.**, and hereby demands for a trial by jury, for all issues so

triable.

                            [SIGNATURES NEXT PAGE]

Respectfully submitted,
**MILLER COHEN PLC**

*/s/ Jocelyn Flemons*
Richard G. Mack, Jr. (P58657)
Jocelyn Flemons (P85448)
*Attorneys for Plaintiff*
7700 Second Ave, Suite 335
Detroit, Michigan 48202
(313) 964-4454
richardmack@millercohen.com
jocelyn@millercohen.com

Dated:        October 27, 2023